In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2731

WEST BEND MUTUAL INSURANCE COMPANY,

*Plaintiff-Appellant*,

*v.*

PAUL W. SCHUMACHER, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-04986 — **Ronald A. Guzmán**, *Judge*.

ARGUED OCTOBER 30, 2015 — DECIDED DECEMBER 21, 2016

Before POSNER, RIPPLE, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. In 2013, West Bend Mutual Insurance
Co. ("West Bend") brought this legal malpractice action
against its former counsel, Paul Schumacher, and his law
firm, Roddy, Leahy, Guill & Ziema, Ltd. ("RLGZ"). The gra-
vamen of the complaint is Mr. Schumacher's alleged perfor-
mance in defending a workers' compensation claim in 2005
and 2006. The district court dismissed the second amended
complaint on the defendant's 12(b)(6) motion and terminated

the case. In the district court's view, the complaint failed to set forth with sufficient specificity a cause of action for legal malpractice. We agree; the complaint fails to state plausibly the causation and harm elements required under Illinois legal malpractice law. Accordingly, we affirm the judgment of the district court.

# I

## BACKGROUND

West Bend first filed a legal malpractice action based on the performance of Mr. Schumacher and RLGZ in the underlying workers' compensation matter in 2008. The parties later agreed to a dismissal of that claim and entered into a tolling agreement pending the resolution of several other tangentially related actions, including one for medical malpractice.

Following the resolution of those claims, West Bend brought the present action in the United States District Court for the Northern District of Illinois in July 2013, and filed an amended complaint in December 2013. After each of these filings, the defendants moved to dismiss. The district court granted each of the motions, concluding that the allegations were too speculative or vague. In each case, however, the court also granted leave to amend.

## A.

The allegations of the Second Amended Complaint are central to our task. We therefore begin with a rendition of its contents.

In December 2005, West Bend retained RLGZ to provide legal representation with respect to a workers' compensation claim filed by John Marzano against West Bend's insured, Nelson Insulation. The substance of Marzano's claim is not described. Mr. Schumacher was the attorney with principal responsibility for defending against the Marzano claim. After several continuances, including one requested by Mr. Schumacher, the Illinois Workers' Compensation Commission ("IWCC") scheduled a hearing on the matter for August 23, 2006.

According to the complaint, Marzano supported his claim with the deposition of his treating physician, Dr. Sheinkop. He also had undergone an independent medical examination by Dr. Nelson, who provided a written report. This report indicated that Dr. Nelson's testimony would be favorable to West Bend and would counter Dr. Sheinkop's opinion. In his preparation for the scheduled August hearing, Mr. Schumacher did not speak to or depose Dr. Nelson. Instead, without seeking the approval of West Bend, he agreed with Marzano's counsel to put a redacted version of Dr. Nelson's report in evidence. Mr. Schumacher also did not speak to any other witnesses or potential witnesses until the day before the scheduled hearing; he then learned that a witness with relevant testimony was out of town and would not be available to testify the following day.

Prior to the hearing, Mr. Schumacher possessed other information that was beneficial to West Bend's defense, including that Marzano worked a full day on the day of the alleged incident, that he continued to work for two additional weeks until he was laid off, and that his own treating physician

could not find any change in the condition of his knee follow-
ing the incident. Mr. Schumacher disclosed all of this infor-
mation, favorable to his client, to Marzano's counsel prior to
the hearing.

Documents also indicated that Marzano had not reported
the incident until after he was laid off and had retained an
attorney. But Mr. Schumacher did not investigate Marzano's
contrary statements and did not verify them with Marzano's
former supervisor, to whom the incident report allegedly had
been made.

On the day of the IWCC hearing, Mr. Schumacher did not
request a continuance or a bifurcated proceeding to allow for
the presentation of additional evidence. Instead, "without
[West Bend]'s knowledge or agreement," Mr. "Schumacher
made the representation to counsel for [Marzano] that [West
Bend] would accept liability of the workers' compensation
claim"[1] and the arbitrator was "advised of that position."[2]
West Bend claims that it "was forced to accept that agreement
pending further investigation of other litigation options."[3]

The complaint further alleges that, as a result of
Mr. "Schumacher's unauthorized actions and representations
to [West Bend], [West Bend] was forced to make significant
payments, including temporary total disability [("TTD")]
benefits and medical expenses, with little or no likelihood of

---

[1] R.71 at 4.

[2] *Id.* at 5.

[3] *Id.*

recovery."[4] To "justify his concession of compensability, defendant Schumacher overemphasized" to his client "the potential for penalties to [West Bend] if the hearing had gone forward."[5] Mr. Schumacher "continued to counsel [West Bend] against getting the case reopened to present its defenses as he believed the case was indefensible."[6]

According to the complaint, West Bend alleged that Mr. Schumacher breached duties to West Bend by virtue of "(a) his unauthorized stipulation concerning compensability; (b) his failure to adequately investigate the claim or claimant's preexi[s]ting medical condition; (c) his subsequent representations to [West Bend] regarding their litigation options[;] and (d) his failure to adequately advise [West Bend] of material facts and legal options prior to hearing."[7] The specific allegations also concerned Mr. Schumacher's failure to depose Dr. Nelson, his disclosure to Marzano's counsel of information beneficial to West Bend, and his failure to discover and remedy the unavailability of a relevant witness for the hearing.

All of these, West Bend alleged, resulted in its being "forced to accept a disadvantageous position which greatly compromised its ability to defend the claim."[8] It also was "forced to pay additional sums and eventually chose to reach a disputed settlement in order to mitigate its exposure":

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

> [a]lthough [West Bend] technically had the op-
> tion of contesting the compensability of the
> claim or filing a motion to terminate benefits af-
> ter retaining new counsel, those options were
> not practical as plaintiff had been paying bene-
> fits for some time and the Commission was un-
> likely to und[o] or reverse such payments. In
> other words, [West Bend]'s payment of benefits
> up to that point severely prejudiced its capabil-
> ity to reverse the concession by defendant Schu-
> macher.[9]

The complaint further alleged that even if the Commission had determined that West Bend was not liable, it was "extremely unlikely" that it would require repayment of prior benefits, and, if it did, "collection of those funds would have been difficult if not impossible."[10]

### B.

In its July 18, 2014 order granting the motion to dismiss the Second Amended Complaint, the district court determined that, with respect to the bulk of West Bend's allegations about Mr. Schumacher's performance—including the failure to depose Dr. Nelson, the failure to contact witnesses prior to the hearing, and the disclosure of certain facts to Marzano's counsel—West Bend's complaint "does not … explain

---

[9] *Id.* at 5–6.

[10] *Id.* at 6.

how any of these alleged acts and omissions harmed its defense."[11] With respect to the allegation that Mr. Schumacher had represented that West Bend would accept liability, the district court stated:

> Though Plaintiff alleges that the representation "forced [it] to … pay[] … temporary total disability benefits and medical expenses, with little or no likelihood of recovery" and "to reach a disputed settlement in order to mitigate its exposure", these assertions are legally and factually unsupported. As a matter of law, paying benefits pending resolution of a claim does not preclude an employer from contesting liability. Moreover, plaintiff admits that it could have contested the claim, despite the representation. In short, because plaintiff does not and cannot allege that defendants' representation was the cause of any damages it may have suffered, the representation cannot support a malpractice claim.[12]

The court therefore granted the motion, and, because it had concluded that West Bend had failed to state a claim in three successive complaints, it terminated the case.

West Bend now appeals.

---

[11] R.80 at 3.

[12] *Id.* at 3–4 (alterations in original) (citations omitted).

## II

## DISCUSSION

### A.

We begin by setting out the principles that must govern our assessment of the Second Amended Complaint.

### 1.

We review a district court's dismissal under Rule 12(b)(6) de novo. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). We, like the district court, must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Id.* A complaint will survive a 12(b)(6) motion if, after the court disregards any portions that are "no more than conclusions," it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "'Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible*, 799 F.3d at 639 (quoting *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015)). After *Twombly* and *Iqbal*, a plaintiff seeking to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level." *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (internal quotation marks omitted).

That is, "[w]hile a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted).

We have interpreted the standard announced by the Supreme Court as requiring that "the plaintiff … give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). In the end, "the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

### 2.

Because federal jurisdiction over this action is premised on diversity of citizenship, *see* 28 U.S.C. § 1332, we must look to the law of the state in which the district court sits to determine the applicable governing law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938). The parties agree that Illinois law governs the elements of this legal malpractice action. The Supreme Court of Illinois has stated succinctly that a cause of action for legal malpractice includes the following elements: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney, (2) a negligent act or

omission constituting a breach of that duty, (3) proximate cause of injury, and (4) actual damages. *See Sexton v. Smith*, 492 N.E.2d 1284, 1286–87 (Ill. 1986).

Illinois courts have described the State's legal malpractice cause of action as following a case-within-a-case model:

> A legal malpractice suit is by its nature dependent upon a predicate lawsuit. Thus, a legal malpractice claim presents a case within a case. *[N]o* malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action, or the loss of a meritorious defense if the attorney was defending in the underlying suit.

*Nelson v. Quarles & Brady, LLP*, 997 N.E.2d 872, 880 (Ill. App. Ct. 2013) (alteration in original) (emphasis in original) (citations omitted) (internal quotation marks omitted).[13] Therefore, in assessing the sufficiency of a complaint of legal malpractice we must focus on the underlying claim. *See Claire Assocs. by Livaditis v. Pontikes*, 502 N.E.2d 1186, 1190 (Ill. App. Ct. 1986). The plaintiff must set forth a plausible statement not only that a breach of duty occurred but that the breach caused the plaintiff to lose a valid claim or defense in the underlying action and that, absent that loss, the underlying claim "would

---

[13] Most cases identify the loss of a meritorious claim or defense as a part of the element of proximate causation. However, some frame it as part of the element of damages. *See, e.g.*, *Bartholomew v. Crockett*, 475 N.E.2d 1035, 1041 (Ill. App. Ct. 1985) ("[D]amage is an element of a professional malpractice claim that is not presumed, [and plaintiff] bears the burden of pleading and proving that damages resulted. This burden entails establishing that 'but for' the attorneys' negligence, the client would have successfully defended or prosecuted the underlying suit.").

have been successful." *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 767 N.E.2d 470, 474 (Ill. App. Ct. 2002).[14] "These elements effectively demand that the malpractice plaintiff present two cases, one showing that her attorney performed negligently, and a second or predicate 'case within a case' showing that she had a meritorious claim [or defense] that she lost due to her attorney's negligence." *Mihailovich v. Laatsch*, 359 F.3d 892, 904–05 (7th Cir. 2004).

## B.

Having stated the principles that govern our inquiry, we now apply these principles to the particular circumstances of this case.

There is no dispute that West Bend has described adequately the duty element in its malpractice claim. Nor is there any disagreement about the adequacy of West Bend's narrative with respect to the alleged attorney conduct constituting a breach of that duty. In that respect, West Bend alleges that Mr. Schumacher, having assumed responsibility for the defense of the claim, failed to prepare adequately for the hearing, revealed inappropriately the defense theory of the case to

---

[14] *Cf. Fox v. Seiden*, 887 N.E.2d 736, 746 (Ill. App. Ct. 2008) (noting that, to satisfy the element of proximate causation in a legal malpractice action, "the plaintiff must plead sufficient facts to establish that 'but for' the negligence of the attorney, the client would have *successfully defended* the underlying suit" (emphasis added)); *Ignarski v. Norbut*, 648 N.E.2d 285, 289 (Ill. App. Ct. 1995) (holding that the plaintiff's burden to plead a case within a case was not satisfied where the pleadings did not "plead ultimate facts establishing" its entitlement to relief on its predicate claim).

Marzano's counsel, and then, without authorization, conceded liability for Marzano's workers' compensation claim.[15]

The allegations with respect to causation and damages present, however, significant concerns. At the outset, we note that the treatment by the Second Amended Complaint of the underlying workers' compensation claim, which, as we have explained, is central to an assessment of causation and damages, is markedly different from the treatment of Mr. Schumacher's alleged litigation conduct. While the complaint describes the conduct in some detail, it describes the underlying workers' compensation claim in rather summary fashion. Specifically, while the complaint identifies the injured party as John Marzano, it tells us nothing about his claimed injury or his claim against his employer. Instead, it summarily states that "[p]rior to August 2006, there existed *certain factual defenses and a medical causation defense* to the Marzano claim."[16]

West Bend's brief on appeal invites our attention to paragraph 25 of the Second Amended Complaint as "set[ting] forth [its] factual allegations concerning defendants' breach of

---

[15] The briefs and the oral argument included significant argument about what precisely Mr. Schumacher conceded. West Bend asserts that he conceded liability on the whole claim. The defendants assert that he simply agreed to pay TTD benefits and the question of final liability remained open until 2010. They ask the court to notice the terms of the eventual settlement agreement reached in the case, which state that no admission of liability has been made by the employer. In their view, we can notice this document as a public record and disregard the contrary allegation, despite our general obligation to take the allegations of the complaint as true under Rule 12(b)(6). We decline to resolve this dispute because for the reasons stated below, we find that the claim, even as alleged, is insufficient to survive dismissal.

[16] R.71 at 2 (emphasis added).

duty, proximate cause and damages."[17] That paragraph of the complaint contains an abbreviated description of Mr. Schumacher's claimed errors, but, with respect to the crucial elements of causation and damages, says only that West Bend "was forced to accept *a disadvantageous position* which *greatly compromised* its ability to defend the claim."[18] This same sort of general language appears in paragraph 28; there West Bend refers to a loss of "*valuable factual and legal defenses* that would have eliminated or substantially reduced any liability of [West Bend] to the claimant."[19] These allegations are conclusory assertions and certainly do not set forth a plausible description of a lost defense that, absent Mr. Schumacher's alleged neglect, would have assured West Bend's success on the underlying claim. *Iqbal*, 556 U.S. at 678–79.

West Bend has not invited our attention to any other factual allegations which detail the "valuable factual and legal defenses" lost because of Mr. Schumacher's litigation conduct. In its appellate brief, West Bend does assert that it "is prepared to offer evidence that, had defendants not committed the breaches from the standard of care, the Marzano claim would likely have gone in an entirely different direction," and indeed, that "there is a strong likelihood [that] West Bend could have either won the entire case or significantly reduced the amount of money it ultimately paid."[20] But again, even now, it does not tell us what these defenses are or how they

---

[17] Appellant's Br. 18.

[18] R.71 at 5 (emphasis added).

[19] *Id.* at 6 (emphasis added).

[20] Appellant's Br. 19.

would have produced near or total success in workers' compensation proceedings.[21]

The complaint's description of Mr. Schumacher's conduct does include an allegation that, prior to the date of the scheduled workers' compensation hearing,

> defendant Schumacher possessed other documentation and information to support a denial of compensabil[i]ty [of the Marzano claim], including: (a) the claimant's completion of the day's work on the day of the alleged incident; (b) the fact that the claimant continued to work following the alleged incident for an additional two weeks until he was laid off on September 28, 2005; and (c) the fact that the claimant's own treating physician, Dr. Sheinkop, could not find any change in the condition of his knee after the alleged incident, as it had already been determined that the claimant was in need of knee replacement surgery.[22]

---

[21] We have held that "[w]e may consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014) (internal quotation marks omitted); *see also Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992) (noting that new facts may be added by affidavit or brief, even an appellate brief). Moreover, we have applied the rule even where a party has amended the complaint in the district court in an attempt to remedy deficiencies. *See generally Smoke Shop, LLC*, 761 F.3d 779; *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439–40 (7th Cir. 1994) (finding new allegations raised on appeal and not included in previously amended pleadings sufficient to defeat dismissal).

[22] R.71 at 3–4.

It also asserts that an unspecified "witness with relevant testimony" was not available to testify and complains that Mr. Schumacher did not request a continuance.[23] It continues by faulting Mr. Schumacher for "reveal[ing] all of this documentation and information—all the key theories of [West Bend]'s defense—to counsel for claimant, which severely compromised [West Bend's] ability to continue to defend the workers' compensation claim."[24] We are given no description, however, as to whether or how this evidence would have produced a successful outcome for West Bend.

With respect to the allegation that Mr. Schumacher had stipulated improperly to the compensability of the claim, West Bend at least makes the allegation that it was required to pay substantial amounts of money because of the stipulation. But it makes no concrete allegation that its final liability in this matter would have been any different if the stipulation had not occurred.

The Second Amended Complaint therefore leaves us to speculate as to whether and how West Bend would have prevailed on the underlying claim in the absence of the missteps of which it now accuses its former attorney. But, as our colleague in the district court recognized throughout West Bend's several attempts to improve the complaint, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *In re marchFIRST Inc.*, 589 F.3d

---

[23] *Id.* at 3.

[24] *Id.* at 4. We note in passing that the alleged harmful "disclosures" of facts all reference facts clearly already known to the claimant, i.e., that he continued working for a time and that his physician had made a prior diagnosis.

at 905 (internal quotation marks omitted). The district court correctly concluded that the allegations that deal with the substance of the underlying compensation claim and defense fall short of that standard because they provide no plausible description as to how the attorney's negligence, if it occurred, was the cause of harm to West Bend. Even when evaluated as a whole, the complaint fails to describe, in even the most rudimentary of ways, "that but for [Mr. Schumacher's] negligence, the plaintiff would have been successful in th[e] underlying" workers' compensation action. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 395 (Ill. 2006). West Bend simply has failed to allege plausibly, despite multiple amendments, that it lost actual, specific, meritorious defenses in the Marzano claim because of Mr. Schumacher's conduct.

**Conclusion**

The Second Amended Complaint fails to plead adequately a claim for legal malpractice under Illinois law. Specifically, it fails to allege plausibly that the outcome of the underlying action would have been more favorable to West Bend, had it not been for Mr. Schumacher's alleged litigation conduct. We therefore affirm the judgment of the district court.

AFFIRMED

HAMILTON, *Circuit Judge*, dissenting. The majority accurately describes the general legal principles that apply to post-*Iqbal* federal pleading and to legal malpractice claims in Illinois. I must respectfully dissent, however, from the majority's application of those principles. The majority applies the post-*Iqbal* pleading standards so stringently as to reinstate, in effect if not in name, the obsolete code pleading regime replaced by the Federal Rules of Civil Procedure in 1938. See generally Arthur R. Miller, *From* Conley *to* Twombly *to* Iqbal*: A Double Play on The Federal Rules of Civil Procedure*, 60 Duke L.J. 1 (2010). The majority's application is so stringent that it runs afoul even of *Iqbal* itself. I would reverse the dismissal of the action.

The majority acknowledges that plaintiff has alleged sufficiently that defendant Schumacher owed it a duty of professional care and breached that duty. Ante at 11. Those points are clearly correct. Schumacher conceded his client's liability for the claimant's worker's compensation claim without his client's consent. He also did so without having taken basic steps to learn the relevant facts. At this stage of this federal case, we must assume these allegations are true.

The majority tells us that what is missing is "a plausible description of a lost defense that, absent Mr. Schumacher's alleged neglect, would have assured West Bend's success on the underlying claim." Ante at 13, citing *Iqbal*. I must respectfully disagree. The path of an available defense was quite clear. In the operative complaint and its briefs to the district court and this court, West Bend makes specific factual allegations showing a solid defense on the merits. The claimant sought compensation for a workplace injury to his knee. The complaint alleged that at the time Schumacher conceded liability without his client's consent, he knew the following:

- the claimant completed work on the day of his alleged injury.

- after the alleged injury, the claimant continued to work another two weeks, until he was laid off.

- before the alleged workplace knee injury, the claimant's physician had already determined that the claimant needed knee replacement surgery.

- the claimant's own treating physician could not find any change in condition in the claimant's knee after the alleged workplace knee injury.

- available documents indicated that the claimant did not report the alleged workplace injury when it supposedly happened or even until well after he was laid off and had retained an attorney.

See Second Amended Cplt. ¶¶15, 17; Dkt. No. 77 at 4 (Mem. in Opp. to Motion to Dismiss); Appellant's Br. at 5. Those factual allegations surely provide "a plausible description of a lost defense": there was no workplace injury at all, or certainly not one that required surgery that the claimant's *own physician had already said he needed before the alleged injury*.

The majority acknowledges these allegations, ante at 14–15, but complains that we "are given no description as to whether or how this evidence would have produced a successful outcome for West Bend," and that we are left to "speculate as to whether and how West Bend would have prevailed on the underlying claim…." Ante at 15.

There is nothing speculative about the defenses that Schumacher abandoned for his client by conceding liability. They are easy to see. If in fact the claimant had already been told

that he needed a knee replacement, or if in fact the claimed workplace injury was not reported at the time and did not prevent the claimant from continuing to work both that day and for weeks afterward, a trier of fact could find as a matter of fact that there simply was no compensable workplace injury.[1]

West Bend may or may not be able to prove its allegations, but these allegations go far beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. From West Bend's detailed factual allegations, a judge can easily draw on her "experience and common sense," *Iqbal*, 556 U.S. at 679, to conclude that West Bend has alleged plausibly that Schumacher's breaches of his professional duty injured West Bend and support a claim for legal malpractice.

In parsing the complaint the majority has focused on the general language in the complaint, criticized it for being "conclusory," and then overlooked the supporting details. In my view the complaint is far more detailed than necessary, but it is surely at least sufficient. See, e.g., *Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 517–18 (7th Cir. 2015) (reversing dismissal), citing *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346 (2014) (summarily reversing appellate dismissal on the pleadings); see also *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (summarily reversing dismissal on

---

[1] Given these allegations, I do not understand the majority's assertion that "even now [West Bend] does not tell us what these defenses are or how they would have produced near or total success in workers' compensation proceedings." Ante at 13–14. At the pleading stage, what further detail is needed?

pleadings for supposed failure to alleged injury and causation).

As the Supreme Court explained in *Johnson*, five years after *Iqbal* was decided: "Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the [defendant]. Having informed the [defendant] of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." 574 U.S. at ___, 135 S. Ct. at 347.

Finally, one of defendants' causation arguments deserves some specific attention. Defendants argue that the complaint and Illinois law of workers' compensation show that West Bend remained free, after replacing Schumacher, to contest its liability on the claim. The defense theory is that Schumacher's breaches of professional duty could not have been proximate causes of West Bend's alleged losses. Appellees' Br. at 30–33.

This defense theory cannot be accepted on the pleadings for any of four independently sufficient reasons. First, as defendants conceded at oral argument, in reviewing only the pleadings, we must assume that Schumacher's concession of liability applied to the entire case, not just to interim payments at the early stages of the case. Second, even if the unauthorized concession was limited to the interim payments, West Bend has alleged that the concession caused it to make substantial interim payments that it could not recover. Third, even if West Bend retained the theoretical ability to contest liability after the unauthorized concession, it has alleged that it lost that ability to do so as a practical matter given the realities of the workers' compensation system. Fourth, West Bend

claims that Schumacher himself advised it against taking exactly the course that Schumacher now claims that West Bend should have pursued.

I cannot judge from the pleadings West Bend's prospects for ultimate success, but it has surely alleged a plausible claim that should proceed past the pleading stage. I respectfully dissent.