In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-1839

TAIZHOU YUANDA INVESTMENT GROUP CO., LTD., and
TAIZHOU YUANDA FURNITURE CO., LTD.,

*Plaintiffs-Appellants,*

*v.*

Z OUTDOOR LIVING, LLC, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cv-875 — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED JANUARY 11, 2022 — DECIDED AUGUST 10, 2022

———————————

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Chinese manufacturer Taizhou Yuanda sued its Wisconsin-based vendors, Z Outdoor Living and AFG, and owners and officers of both companies, after the companies failed to pay Taizhou money owed under a furniture production deal. Taizhou sued for breach of contract and under tort theories of fraud and conversion, alleging eligibility for recovery in tort on the basis that Taizhou only

continued to do business with the defendants because they repeatedly misled Taizhou about when it could expect payment for prior orders. The parties resolved the breach of contract claims, and the district court dismissed the plaintiffs' tort claims under Federal Rule of Civil Procedure 12(b)(6), concluding they were barred by Wisconsin's economic loss doctrine. Taizhou says we should reinstate those claims because two exceptions to that doctrine apply. But we disagree and so affirm.

I

We recite as true the well-pleaded facts raised in the complaint. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

In January 2017, Taizhou Yuanda Furniture Co., Ltd. (a Chinese manufacturer and subsidiary of Taizhou Yuanda Investment Group Co., Ltd., collectively "Taizhou") entered into a Cooperation Agreement with Z Outdoor Living, LLC (a Wisconsin company wholly owned by Casual Products of America, LLC). Under the Cooperation Agreement, Taizhou would manufacture outdoor furniture and other related items for Z Outdoor to sell to customers.

The Cooperation Agreement provided that customers would order Taizhou-manufactured furniture through Z Outdoor, which would then send purchase orders to Taizhou for fulfillment. Once those orders were fulfilled, Z Outdoor was to pay Taizhou for all outstanding invoices within 10 days of receiving payment from the customer. The agreement also stated that Z Outdoor would clarify all payment terms in the purchase orders and would pay Taizhou on the price detailed in the outstanding invoice.

Z Outdoor eventually stopped paying Taizhou for all the purchase orders Taizhou had fulfilled. Don and Erin Corning, on behalf of Z Outdoor, made a series of false statements between August 2, 2018 and February 20, 2019 about future business, forthcoming payment, and other causes for the delays. According to Taizhou, these false statements convinced the company to "continue to … procure materials, manufacture the furniture, and fill customer orders even without receiving compensation for their goods."

In October 2018, AFG (a Wisconsin LLC also wholly owned by Casual Products of America, LLC) started submitting purchase orders to Taizhou. AFG never signed the Cooperation Agreement but told Taizhou that AFG would begin to submit orders in order to increase their business with a national chain of home improvement stores. According to the complaint, "[l]ike Z Outdoor, AFG obtained purchase orders from customers and then submitted those purchase orders to [Taizhou]. … [Taizhou] filled the orders and shipped the products … [and] then sent AFG invoices for the products that had been ordered[.]"

AFG also stopped paying Taizhou for the orders. Like Z Outdoor, AFG reps, including AFG President Kendra Farley and another owner of AFG, Pete Hill, made a series of false statements between November 26, 2018 and August 14, 2019 regarding payment delays and when payment could be expected. In sum, the total due from Z Outdoor and AFG accrued to $14 million for purchase orders sent between 2017 and 2019.

In October 2019, Taizhou sued both Z Outdoor and AFG, their shared parent company Casual Products of America, in addition to Don Corning, Erin Corning, Kendra Farley, and

Pete Hill, in federal court, alleging a number of claims against each of the various defendants, including breach of contract and unjust enrichment, and most relevant to this appeal, fraud against all defendants except Casual Products of America and conversion against all defendants.

The defendants did not challenge the breach of contract claims but contended that all of the other claims were redundant of that claim or were not actionable. The district court largely agreed, allowing the case to proceed on claims against Z Outdoor and AFG for breach of contract and against Z Outdoor, AFG, and Casual Products of America for unjust enrichment and dismissing all other claims against all other parties. The court eventually entered default judgment against the corporate defendants on the contract claims after the companies failed to defend those claims, but entered judgment against Taizhou on the unjust enrichment, fraud, and conversion claims. Relevant to this appeal, the court held that the fraud and conversion claims against all the defendants were barred by Wisconsin's economic loss doctrine. In other words, the district court dismissed the tort claims as mere repackaging of Taizhou's "straightforward breach of contract claim," which is precisely the type of claim that Wisconsin's economic loss doctrine seeks to prevent. Taizhou now appeals the district court's dismissal of its fraud and conversion claims, arguing that two exceptions make the economic loss doctrine inapplicable. (Taizhou has not asked us to decide whether the individual defendants might be found responsible under a veil-piercing approach in collection proceedings on the breach of contract claims.)

II

Under Wisconsin law, which all parties agree applies in this diversity suit, the economic loss doctrine bars recovery in tort for economic losses sustained from a contractual dispute. See *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 216 (Wis. 2005)  (The doctrine "preclud[es] contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship.") (citation omitted). Taizhou claims two different exceptions to this doctrine under Wisconsin law apply to this case, either of which would permit Taizhou's recovery from the defendants in tort. We review de novo the district court's rejection of both exceptions under Rule 12(b)(6). *W. Bend Mut. Ins. Co.*, 844 F.3d at 675.

A

In Wisconsin, the economic loss doctrine does not bar tort recovery related to a fraudulently induced contract. See *Kaloti,* 699 N.W.2d at 219. Taizhou argues that the defendants' false statements induced Taizhou to fill new purchase orders in 2019. But to accept that this fraud triggers an exception to the economic loss doctrine, we would have to find that the 2019 purchase orders were a new, separate contract (or contracts) because "the fraud must be extraneous to [an existing] contract, rather than interwoven with it, to be actionable as a tort." *Schreiber Foods, Inc. v. Lei Wang,* 651 F.3d 678, 682 (7th Cir. 2011); *Kaloti*, 699 N.W.2d at 219. There is no basis on which we could conclude that here.

On appeal, Taizhou frames the 2019 purchase orders as extraneous to prior orders, presumably to suggest that these new orders were separate contracts. But according to the

complaint, all purchase orders were submitted under the Co-operation Agreement, acting merely as the nuts-and-bolts of this dealer-supplier contractual relationship. The complaint never suggested that any of the purchase orders were under a separate contract (or were themselves separate, individual contracts), and the arguments before the district court never distinguished the 2019 orders as such either (in fact, the sample purchase orders Taizhou entered into the record are simple, standard order forms from one of the customers, Menards, and contain no suggestion of an agreement between Taizhou and the defendants). Rather, Taizhou alleged that the defendants' statements fraudulently induced Taizhou "to *continue*[] to obtain materials from suppliers, manufacture products, and deliver the products to customers" (emphasis added), which characterizes the role of the 2019 purchase orders as simply the means of carrying out the ongoing underlying agreement. In other words, Taizhou's own characterization of the fraud dooms this claim because it alleges the fraud induced Taizhou to *continue* the contract, not enter a new one.

Furthermore, we have recognized that the critical distinction between fraud that is "interwoven with" a contract as opposed to "extraneous to" that contract is whether one would expect for the matter over which the fraud occurred "to be dealt with in the contract." *Schreiber Foods*, 651 F.3d at 682 (quoting *Kaloti*, 699 N.W.2d at 220). All the fraudulent statements alleged were promises to pay orders made under the Cooperation Agreement—that Taizhou was being paid amounts due under outstanding purchase orders and that the defendants had set up automatic payments for payment of past contracts—so were "interwoven with" the Cooperation Agreement. See *id.* at 683 (concluding that the fraud was interwoven because "[t]he risk of nonpayment was so salient a

risk that one would expect it to have been dealt with in the contract").

While we take as true that the defendants' statements were fraudulent (defendants lying that accounts had been set up, forging bank documents, and claiming they would pay what was due), as pled, this fraud was all interwoven with the Cooperation Agreement, so the economic loss doctrine applies. Accord *id.* ("[W]hen there are well-developed contractual means of protecting against risk of nonpayment there is likewise no need to provide tort remedies.").

Taizhou says this conclusion misunderstands the structure of the parties' contractual relationship because "the Cooperation Agreement … did not provide any terms for actual purchase or sale of furniture—that was to be conducted through subsequent purchase order contracts." But the Cooperation Agreement did define the structure of the business relationship around the purchase orders, which were to be submitted for every order, and it was the plaintiffs' own complaint which characterized that contract as ongoing at the time the fraudulent statements occurred. The assertion that the governing contract itself did not sufficiently protect Taizhou from risk of nonpayment, so we must look beyond it for such protections, is not a basis on which we may ignore that governing contract entirely. *Id.* (no tort recovery for plaintiff company that failed to write sufficient risk mitigation terms for a "salient" risk into its governing contract); see also *Wausau Tile, Inc. v. Cnty. Concrete Corp.*, 593 N.W.2d 445, 455 (Wis. 1999) (one "reason for applying the economic loss doctrine is to protect parties' freedom to allocate economic risk via contract. … Allowing purchasers to elect recovery under tort theories instead of requiring them to rely on their contractual remedies

rewrites the agreement by allowing a party to recoup a benefit that was not part of the bargain.") (citation omitted).

Taizhou also submits that AFG did not sign the Cooperation Agreement, so the economic loss doctrine at least does not bar fraud claims against AFG. True enough, AFG did not sign the Cooperation Agreement. But according to the complaint, Taizhou did have some contract with AFG because it seeks recovery for breach of that contract. With respect to the structure of that agreement, Taizhou says in its complaint that it accepted purchase orders from AFG "[l]ike Z Outdoor," under the same operating procedures as the Cooperation Agreement. And the complaint positions AFG's fraud as identical to Z Outdoor's fraud, in that it induced Taizhou into "continu[ing]" the existing relationship to fill more purchase orders. So the well-pleaded facts show that AFG had an unwritten contract with Taizhou that mimicked at least the purchase-order structure of the Cooperation Agreement.

B

Taizhou next argues that the economic loss doctrine does not bar its claim because its losses are not limited to economic losses: beyond unpaid orders, Taizhou also suffered damage to its business by devoting additional manufacturing capacity and procuring additional raw materials. See *Kaloti*, 699 N.W.2d at 216 (stating that Wisconsin's economic loss doctrine precludes tort recovery only for economic losses). But Taizhou's additional losses are clear economic losses under Wisconsin law. See *id.* (defining "economic loss" to include "recovery as a result of … failing to live up to a contracting party's expectations"). Taizhou devoted additional capacity and procured additional raw materials based on expectations of payment from the defendants, which the defendants failed

to live up to, and now, as a result, Taizhou has suffered economic losses. Accord *Wausau Tile,* 593 N.W.2d at 456 (holding that claims for damages involving "failed economic expectations" are barred by the economic loss doctrine because they are "the province of contract law"). To the extent the damages described amounted to lost profits or lost business (or as Taizhou refers to them, "sunk costs," which are just an input into the profits equation), those are also economic losses under Wisconsin law. See *id.* (holding that "lost business and profits are indirect losses" that "constitute economic loss … not recoverable in tort").

C

Taizhou also brings a conversion claim, alleging that the defendants took control over customer payments when they should have paid some of those amounts over to Taizhou. The district court held that the economic loss doctrine also barred this claim. Because we find the economic loss doctrine applies to this case, and the plaintiffs make no separate argument as to why it should not apply specifically to the conversion claim, we affirm the district court's decision on the conversion claim.

AFFIRMED