Georgia SLEDGE, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

George SANDS; and Credit Control Services, Inc. d/b/a Credit Collection Services, Defendants.

No. 98 C 1026.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 17, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, Michelle R. Teggelaar, Homewood, IL, for plaintiff.

Timothy McCarthy, Jerome McSherry & Assoc., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Georgia Sledge, moves to certify a class on behalf of herself and all similarly situated individuals who received debt collection letters from the defendants, George Sands and Credit Control Services, Inc. ("CCS"). Ms. Sledge alleges the collection letters violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Illinois Law, and Massachusetts Law.[1] Ms. Sledge also moves for partial summary judgment against CCS on the issue of liability under the FDCPA. For the following reasons the motion for class certification is granted and the motion for summary judgment is denied.

### Class Certification

#### A. Allegations

■ In considering a motion for class certification, the court takes the plaintiff's allegations in support of certification as true and does not examine the merits of the case. *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Georgia Sands is an Illinois resident and a "consumer" within the meaning of the FDCPA. (Amended Comp. ¶ 3). CCS is a Delaware corporation with its principal place of business in Massachusetts. CCS is engaged for profit in the collection of consumer debts and is a "debt collector" within the meaning of the FDCPA. (Amended Comp. ¶¶ 4–5). Gerald Sands is the president and chief executive officer of CCS. (Amended Comp. ¶ 7).

On or about June 7, 1997, CCS sent Ms. Sledge a debt collection letter. The front of the letter stated, in bold print and capital letters, that:

under certain circumstances, cancellation or discharge of debt may be considered income to the debtor by the internal revenue service under IRS code 61(a)(12), and by state taxing authorities.

Where the amount of debt canceled or discharged is $600.00 or greater, the creditor may be required to report such information to the IRS. On debts below $600.00, the creditor may have the option of reporting this information to the IRS.

No such report may be filled [sic] by the creditor if payment is made in full.

(Amended Comp. ¶ 13; Ex. A). Ms. Sledge alleges that almost no debtor to whom CCS directs a collection letter will ever realize taxable income as a result of what the debtor

---

1. Ms. Sledge amended her complaint to add a Massachusetts Law claim on May 4, 1998.

does or does not do in response to the letter. (Amended Comp. ¶ 23). Ms. Sledge states that CCS's mention of the Internal Revenue Service ("IRS") in the collection letter is meant to convey the message that failure to pay the debt will result in the debtor getting into trouble with the IRS. (Amended Comp. ¶ 24). Ms. Sledge alleges reference to the IRS is misleading and intimidating and thus, violates the FDCPA. (Amended Comp. ¶ 25). Ms. Sledge wants to certify a class of individuals that received letters like hers directed to an Illinois address after February 18, 1997. (Amended Comp. ¶ 28).

*B. Rule 23 Requirements*

To obtain class certification, the individual plaintiffs must satisfy the four requirements of Rule 23(a) and one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. The requirements of Rule 23(a) are that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ Ms. Sledge has propounded discovery to determine the exact number of class members. (Pl. Class Cert. Ex. B). Although she is unsure of how many class members there will be, it is likely to be large based on CCS's size and the frequency with which collection letters are sent to debtors. It is unlikely many individuals could press their own claims. CCS has not argued that joinder is possible in this case. Accordingly, the numerosity requirement is met.

■ In order to satisfy the Rule 23(a) commonality requirement the named plaintiff "need only demonstrate that there is at least one common question—either of law or fact." *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472, at *4 (N.D.Ill. Mar.25, 1997). The central question in this litigation is whether CCS's collection letters violate the FDCPA. This is determined by applying the "unsophisticated consumer" standard to the letters and is not dependent upon actual reliance by the plaintiff. *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994). Thus, there is a common legal issue for the class.

CCS argues commonality is not met. CCS notes the FDCPA only applies to debts incurred for "personal, family, or household purposes." 15 U.S.C. § 1692a(5). It does not apply to business debts. CCS suggests Ms. Sledge's debt and the debt of other class members might be business debts and that the need to determine whether each class member's debt was for business or personal purposes ruins commonality.

Ms. Sledge alleges that her debt was incurred for auto insurance obtained for non-business purposes and this allegation is taken as true. (Amended Comp. ¶ 10). Those individuals that received a collection letter based on business debts should not be included as class members. But this has no bearing on the issues common to the class or CBC's liability to the class. The burden rests with possible class members to prove they are part of the class; that is, to prove they incurred debts for personal purposes. Individuals unable to prove their debts were incurred for personal purposes are excluded from the class.

■ Under CBC's reasoning, it would be impossible to bring a FDCPA class action if there was a chance a possible class member incurred a business debt. Only those classes whose claims revolve around debts which on their face could definitively be associated with personal purposes could be certified under the FDCPA. Such a finding would be contrary to the clear remedial goals of the FDCPA. The fact that some of the proposed class members may not ultimately meet the requirements to be part of the class does not defeat commonality.

■ The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions*, § 1115(b) at 185 (1977)). Here, each

claim arises from a plaintiff receiving a similar collection letter that allegedly violates the FDCPA. CCS argues that since Ms. Sledge's debt may have been incurred for a business purpose she does meet the typicality requirement. As noted above, however, Ms. Sledge alleges that she incurred her debt for auto insurance obtained for non-business purposes. (Amended Comp. ¶ 10). Accordingly, Ms. Sledge has met Rule 23(a)'s typicality requirement.

▇▇▇ Finally, the named plaintiff must provide fair and adequate representation.

> The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, ... (2) the named representative must have sufficient interest in the *outcome to ensure vigorous advocacy*, ... and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations and quotations omitted). A class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir.1991). The class representative must "understand the basic facts underlying his claims." *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D.Ill.1996). "General knowledge and participation in discovery are sufficient to meet this standard." *Id.* (citations omitted). "[I]n demonstrating a class representative's adequacy, the burden is not a heavy one." *Ries v. Humana Health Plan, Inc.*, No. 94 C 6180, 1997 WL 158337, at *9 (N.D.Ill. Mar.31, 1997).

▇▇▇ Ms. Sledge's counsel has included a list of qualifications and they are extensive. (Pl. Class Cert. Ex. C). Members of the proposed class seek money damages based on nearly identical claims and thus, Ms. Sledge does not appear to have interests antagonistic to those of the class. CCS argues, however, Ms. Sledge has failed to show she will vigorously advocate for the class or that she understands her obligations as class representative. Ms. Sledge, in her complaint, alleges she will fairly and adequately represent the class. (Amended Comp. ¶ 33). To date she has retained experienced counsel and has vigorously litigated this action, moving for both class certification and summary judgment. There is no reason to believe she will not vigorously advocate for her cause and CCS has not provided any evidence to the contrary. Accordingly, Ms. Sledge meets the adequacy requirement of Rule 23(a).

▇▇▇ Ms. Sledge's class must also meet one of the Rule 23(b) requirements. Ms. Sledge argues that, under Rule 23(b)(3), common questions of law and fact predominate and a class action is superior to other forms of adjudication. There is a common factual link among the proposed plaintiffs; each plaintiff received a very similar letter from CCS. The predominate legal issue is whether these letters violate the FDCPA. Additionally, a class action is the superior form of adjudication for this case. Many plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits. The FDCPA itself recognizes the propriety of class actions by providing special damages sections for class action cases. 15 U.S.C. §§ 1692a & b.

In sum, Ms. Sledge has satisfied the requirements of Rule 23(a) and Rule 23(b). The motion for class certification is granted.

### *Liability*[2]

▇▇▇ Ms. Sledge argues the CCS collection letter is misleading and violates the "unsophisticated consumer" standard of the FDCPA. The purpose of the FDCPA is to "protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir.1982). In determining a viola-

---

**2.** CCS *does not contest the fact it is a debt collector or that it sent Ms. Sledge the previously cited debt collection letter on or about June 9,* 1997. (Rule 12(M) Statement ¶¶ 4–6; Rule 12(N) Response ¶¶ 4–6).

tion of the FDCPA a court must view the collection letter through the eyes of the "unsophisticated consumer" to determine whether a collection letter is false or misleading. *Gammon*, 27 F.3d at 1257. An "unsophisticated consumer" is one who is "uninformed, naive, or trusting . . . ." *Id.*

■■■ CCS's collection letter informed Ms. Sledge that "under certain circumstances" the IRS could consider a discharged debt income and that if the discharged debt exceeded $600.00 CCS might be required to report the discharge to the IRS. (Pl. SJ Motion Ex. A). The letter stated that if Ms. Sledge paid her debt in full then CCS could not file a report with the IRS. *Id.* To the naive, "unsophisticated consumer," the implication of CCS's letter is that if a debtor does not pay his or her debt in full, then CCS might inform the IRS the debtor has earned income based on the discharge of the debt.

Ms. Sledge argues that the implication in CCS's letter violates various sections of the FDCPA because there are a minuscule number of debtors who, through a discharge of debt, will actually receive "income" as defined by the Internal Revenue Code. CCS counters that its letter is literally true and thus, does not violate the FDCPA.

CCS's letter is literally true. The Internal Revenue Code defines "gross income" as "all income from whatever source derived, including . . . [i]ncome from discharge of indebtedness . . . ." 26 U.S.C. § 61(a)(12). Additionally, the Code of Federal Regulations requires collection agencies, under certain circumstances, to report to the IRS a discharge of debt of $600.00 or more. 26 C.F.R. § 1.6050P–1(a)(1).

■■■ A literally true collection letter, however, can still convey a misleading impression. *Accord Gammon*, 27 F.3d at 1258. Ms. Sledge contends that the number of debtors that are in a position to be reported to the IRS is extremely limited compared to the number of debtors receiving CCS collection letters and thus, CCS is misleading the majority of debtors. Ms. Sledge correctly points out that the Internal Revenue Code excludes from "gross income" the discharge of indebtedness if the discharge occurs in a Title 11 case or when the taxpayer is insolvent. 26 U.S.C. § 108(a)(1)(A) & (B). CCS also concedes that the compromise or withdrawal of a disputed claim is not considered a discharge of debt. (Df. Answer ¶ 19). Ms. Sledge argues that since most of the debtors that receive CCS's collection letters fall into one of the above categories their discharge of debt will not be reported to the IRS and CCS's letters are misleading.

I agree that if the majority of debtors receiving CCS's collection letters will not realize income for the discharge of debt, then CCS's letter provides a misleading impression and violates the FDCPA. Ms. Sledge, however, has not provided evidence on the number of individuals receiving CCS collection letters who will fail to realize income through a discharge of debt. While Ms. Sledge argues that most debtors fall into either the Title 11 or insolvency category, there is no evidence of that fact. If there are only a few debtors who will fail to realize income while CCS's collection letter actually applies to a majority of the recipients, then the letter is not misleading.[3]

Ms. Sledge has moved for summary judgment and must produce evidence to show she is entitled to judgment as a matter of law. It is not CCS's burden to show that the information in its collection letter applies to most debtors that receive the letter. Rather, it is Ms. Sledge's burden to show that the collection letter does not apply to most debtors and thus, is misleading.[4] Ms. Sledge has not

**3.** Ms. Sledge states in her reply brief that she has facts that prove CCS has never reported a debtor to the IRS and that this proves the letter is misleading. Ms. Sledge offers this evidence for the first time in her reply brief and did not present the fact in her Local Rule 12(M) Statement of uncontested fact. Thus, it is not properly before the court and will not be considered in this opinion.

**4.** If Ms. Sledge had certified a class of individuals whose debts were discharged through Title 11 or insolvency, her lack of evidence would not be an issue because the information in the collection letters would obviously not have applied to the class. She did not, instead choosing to certify a class of all individuals that received a collection letter from CCS. If the literally true letter applies to most of these individuals, it is not misleading.

met that burden and summary judgment is premature at this time.[5]

### Conclusion

For the foregoing reasons Ms. Sledge's motion for class certification is granted and the her motion for summary judgment is denied.

**5.** Aside from arguing CCS's letters violate the general application provision of the FDCPA, Ms. Sledge suggests CCS's collection letters violate a variety of specific sections of the FDCPA. *See* 15 U.S.C. §§ 1692d, 1692e(2), 1692e(5), 1692e(7), 1692e(10). Since it is unclear whether CCS's letters are misleading, Ms. Sledge fares no better under 15 U.S.C. §§ 1692e(2), 1692e(7), and 1692e(10). If, as Ms. Sledge alleges, CCS never reports debtors to the IRS regardless of their debt, then, even if the majority of debtors could be reported to the IRS, CCS's letter may violate 15 U.S.C. §§ 1692d & 1692e(5). But, as noted above, the evidence Ms. Sledge presents to prove CCS never reports debtors to the IRS is not properly before the court. Thus, Ms. Sledge's allegation is unsupported and summary judgment under these provisions is also premature at this time.