In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1740

CHARLES O. SIMS AND SANDRA ADAMS,

*Plaintiffs-Appellants*,

*v.*

GC SERVICES L.P., DLS ENTERPRISES, INCORPORATED,
AND GC FINANCIAL CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 C 4077—**Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 1, 2005—DECIDED APRIL 26, 2006

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

BAUER, *Circuit Judge.* Plaintiffs Charles Sims and Sandra Adams brought suit under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (1998) ("FDCPA"). They contend that the defendants intentionally overshadowed the required statutory notice to make it unnecessarily difficult to read and that the overshadowing and its effect are questions of fact for the jury. The district court granted defendants' motion for summary judgment. We affirm.

## I. Background

Plaintiffs Charles Sims and Sandra Adams each received a dunning letter from defendant GC Services. The front side of each letter advised plaintiffs of the amount of debt owed and asked them to promptly satisfy their debts. The letters indicated that the collection efforts would continue until successful. The collection demand letter is printed in black ink on a white background. The text is left-justified and printed in standard font. At the bottom of the front page of each letter, in bold, red, capital lettering, is the following warning: "**NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.**"

The statutory notice, typically called a validation notice, is required by 15 U.S.C. § 1692g and was printed on the reverse side of the demand letters. The notice advises consumers of their legal rights under FDCPA. In language mirroring 15 U.S.C. § 1692g, the notice explained the collection process and what consumers should do if they chose to dispute the debt. The notice was in gray ink, all capital lettering, and was set against the same white background used for the front of the letter. In the letter sent to Mr. Sims, the validation notice was written in both English and Spanish. In the letter sent to Ms. Adams, the validation notice was written in English, Spanish, and French.

Sims and Adams filed this suit against GC Services, L.P., DLS Enterprises, Incorporated, and GC Financial Corporation (collectively, "defendants"), alleging that the collection letters they received violated the FDCPA. Plaintiffs claim that the formatting and design of the reverse side of defendants' collection letters rendered the validation notice difficult for an unsophisticated consumer, or one with poor eyesight, to notice or comprehend. Specifically, plaintiffs claim that the defendants intentionally employed several techniques to make the validation notice harder to read: a

light gray color for the font, all capital lettering, full justification, narrow spacing between the lines, and multiple languages. Plaintiffs further contend that the difficult to read font and formatting characteristics are exacerbated by misleading language on the front of the letters. The front side of the letters indicate that defendants will continue collection efforts until the matter is resolved, and such language, plaintiffs argue, contradicts the validation notice.

Plaintiffs submitted a report supporting their position. The report, prepared by Dr. Timothy Shanahan, presented a readability and design analysis of six collection letters. Notably, the letters sent to Sims and Adams were not formally analyzed by Dr. Shanahan. While Dr. Shanahan examined 36 additional letters, including the letters sent to Mr. Sims and Ms. Adams, he did not conduct a readability and design analysis on these additional letters. In the district court, defendants moved to strike Dr. Shanahan's report as irrelevant and inadmissable. The defendants moved for summary judgment, arguing that the collection letters were, on their face, not difficult to read. Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 56(f), to continue briefing on the defendants' summary judgment motion so that plaintiffs could conduct additional discovery as to the defendants' intent in drafting the letters. In the affidavit submitted in support of plaintiffs' Rule 56(f) motion, plaintiffs' counsel stated that discovery was needed relating to formal or informal testing performed on the letters, the persons involved in drafting the letters, the process involved in creating the letters, and materials or complaints related to FDCPA compliance. Plaintiffs did not seek additional time to conduct consumer surveys or to obtain additional expert testimony. Defendants responded that the additional discovery was not relevant to the issues before the court on summary judgement; the district court agreed and denied plaintiffs' request.

In opposition to defendants' motion for summary judgment, plaintiffs argued that genuine issues of material fact remained as to whether the § 1692g notice was overshadowed or confusing and whether defendants intentionally crafted the letters to obscure the substance of the notice. Further, they urged that their discovery disputes with defendants raised a presumption of defendants' intent to craft dunning letters that obscure the substance of the required validation notice.

The district court granted defendants' motion for summary judgment and denied the plaintiffs' requests to supplement its response to the summary judgment motion. Judge Mihm reasoned that the plaintiffs' supplemental motions, which included documents from other litigation against defendants and were directed towards defendants' intent, were wholly unrelated to the Court's narrow task of determining whether the Sims and Adams dunning letters violated the FDCPA as a matter of law. Plaintiffs timely appealed.

## II. Analysis

We review the district court's grant of summary judgment *de novo*. *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005).

The FDCPA requires debt collectors to send consumers a written validation notice containing certain information within five days of the initial communication. *Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 511 (7th Cir. 2004). The notice must include the amount of the debt, 15 U.S.C. § 1692g(a)(1), the name of the creditor, 15 U.S.C. § 1692g(a)(2), and a statement explaining that unless the debtor, within 30 days of receiving the notice, "disputes the validity of the debt . . . the debt will be assumed to be valid by the debt collector" 15 U.S.C. § 1692g(a)(3). The notice must also disclose that,

if the debt collector receives written request from the debtor within 30 days of receiving the notice, it will provide verification of the debt, 15 U.S.C. § 1692g(a)(4), and will provide the name and address of the original creditor if it differs from the current creditor, 15 U.S.C. § 1692g(a)(5). Finally, if the debtor notifies the debt collector within the 30-day period that the debt is disputed or requests the name and address of the original creditor, then the debt collector "shall cease collection of the debt" until the debt collector obtains verification of the debt or the name and address of the original creditor and the requested information is mailed to the debtor. 15 U.S.C. § 1692g(b).

The validation notice required by the FDCPA must be presented in a nonconfusing manner. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). In reviewing the collection letters to determine whether they violate the FDCPA, we view the letters from the "standpoint of the so-called unsophisticated consumer or debtor." *Durkin*, 406 F.3d at 414. The unsophisticated debtor is regarded as "uninformed, naive, or trusting," but nonetheless is considered to have a "rudimentary knowledge about the financial world and is capable of making basic logical deduction[s] and inferences." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004) (internal quotations omitted). The unsophisticated debtor standard, however, is an objective one. *Durkin*, 406 F.3d at 414-15. As a result, a plaintiff's mere claim of confusion is not enough to withstand a motion for summary judgment. Rather, a plaintiff must demonstrate that the letter's language unacceptably increases the level of confusion. *Id.* Given this standard, "a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact 'unless a significant fraction of the population would be similarly misled.'" *Id.* quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (2000).

Plaintiffs contend that defendants violated the FDCPA by making the statutory notice less prominent and more

difficult to read than the payment demand portion of the letter, a technique they refer to as "visual overshadowing." They argue that confusion caused by visual overshadowing is a question of fact for a jury.

In reviewing a defendant's motion for summary judgment in an FDCPA case, this Court will find a triable issue of fact if the collection letter is confusing or unclear on its face. *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004). The burden of proof is on the plaintiffs to present evidence of confusion (beyond their own) in the form of an objective measure, like "a carefully designed and conducted consumer survey." *Id.* Mere speculation that the unsophisticated debtor *could* be confused by a dunning letter is not enough for an FDCPA plaintiff to survive a summary judgment motion. *Durkin*, 406 F.3d at 414-15. Where it is apparent that a collection letter would not confuse a significant fraction of the population, summary judgment should be granted in favor of the defendant unless the plaintiff has presented "objective evidence of confusion." *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 575 (7th Cir. 2004). We review the district court's discovery rulings for abuse of discretion. *Davis*, 396 F.3d at 885.

We disagree with plaintiffs that the visual overshadowing creates an issue of material fact for trial. First, the evidence that plaintiffs offer to show that the letter confuses or overshadows the validation notice consists of a report that analyzed six letters. Significantly, plaintiffs' letters were not analyzed in the report. Dr. Shanahan's analysis of the text design and readability of dunning letters admittedly similar to the letters at issue here does not by itself create an issue of material fact that survives summary judgment. As we have noted in the past, we welcome objective evidence that can be helpful in determining whether a dunning letter violates the FDCPA, such as surveys that attempt to measure the level of consumer understanding, similar to

trademark cases. *See Johnson v. Revenue Management Corporation*, 169 F.3d 1057, 1060-61 (7th Cir. 1999) (holding that plaintiffs are entitled to relief if they can demonstrate that unsophisticated consumers misunderstand their rights because the dunning letters are sufficiently confusing).

In this case, plaintiffs rely on a readability and design analysis of a dunning letter's text to prove that the letters are confusing or visually overshadowed. They did not offer objective evidence in the form of consumer surveys. Further, plaintiffs' requests for additional discovery were not aimed at ascertaining consumer confusion but rather were focused on defendants' intent in drafting the letters.

Plaintiffs argue that defendants' violations were "intentional," in that they chose all capital lettering and low-leading and light gray font for the validation notice. But intent is not an element of an FDCPA violation. *See Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) ("Section 1692e applies even when a false representation is unintentional"); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33-34 (2d Cir. 1996). If debt collectors go to great lengths to produce confusing letters and attempt to deceive the recipients, their intent would not matter if the letters on their face contained the required notifications and would not confuse the unsophisticated consumer. Conversely, debt collectors might make every effort to make the letters clear and not confusing, yet if the letters would confuse the unsophisticated consumer and violate the statute, debt collectors would be held liable. In short, intent plays no role in determining whether a particular letter violates the FDCPA.

Plaintiffs repeatedly rely on a passage from *Bartlett v. Heibl* that states, "the required notice might be 'overshadowed' just because it was in smaller or fainter print than

the demand for payment." *Bartlett*, 128 F.3d at 500, (citing *United States v. National Financial Services, Inc.*, 98 F.3d 131, 139 (4th Cir. 1996)). This reliance ignores the bright, bold, red notice on the front of the letter advising the plaintiffs and other debtors that they should "**SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION**." After reading that notice, even unsophisticated consumers would turn the letter over to see the information on the back, which answers the concern raised in *Bartlett*.

Our cases encourage collection agencies to make the validation notice as easy to read as possible. Defendants emphasized on the front of the letter in prominent, red, bold, capital lettering that important consumer information was listed on the back. Though the validation notice text on the back is more difficult to read than the text on the front, it is adequately readable and noticeable when combined with the attention called to it on the front of the letter. If the language itself is confusing, defendants are not to blame. These wording complaints should be addressed to Congress; the validation notice tracks the statutory language almost verbatim. The district court properly concluded as a matter of law that the letter on its face did not violate the FDCPA.

Plaintiffs next argue that the dunning letters' demands contradicted or verbally overshadowed the validation notice. *See Bartlett*, 128 F.3d at 500 (explaining how a required notice can be obscured or overshadowed similar to static or cross-talk on a telephone conversation). Again, plaintiffs rely heavily on *Bartlett*, claiming that there are inherent contradictions between the dunning letters and the validation notice. While *Bartlett* informs our Court's framework for FDCPA violations and even provides an example of safe dunning letter wording, the "overshadowing" that occurred in *Bartlett* is readily distinguishable from what plaintiffs present here. In *Bartlett*, the plaintiff's claim was that the dunning letter contradicted his rights under the FDCPA

because it told the debtor that if he did not pay within one week he would be sued, which is a direct contradiction of the validation notice that gives the debtor 30 days to dispute the debt. Here, no rights are contradicted. The statement that the collection agency would continue with collection efforts until the matter is handled does not obscure the debtor's statutory entitlement to a 30-day period in which to dispute the debt. *See Olson*, 366 F.3d at 512-13. In fact, we have held that such language "is in the nature of puffing, in the sense of rhetoric designed to create a mood rather than convey concrete information or misinformation . . ." *Taylor*, 365 F.3d at 575-76. Of course debt collectors will continue with collection efforts until the debt is paid since, after all, that is their business. But the validation notice gives consumers a specific process to follow in order to dispute the debt. Additionally, at the end of defendants' validation notice it states, "THE DEMANDS FOR PAYMENT IN THIS LETTER DO NOT REDUCE YOUR RIGHTS TO DISPUTE THIS DEBT, OR ANY PORTION THEREOF, AND/OR TO REQUEST VERIFICATION WITHIN THE THIRTY (30) DAY PERIOD AS SET FORTH ABOVE." The district court did not err in deciding as a matter of law that the letter's demands did not contradict or verbally overshadow the statutory notice required under the FDCPA.

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*