In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-2134

AMY DUNBAR,

*Plaintiff-Appellant,*

*v.*

KOHN LAW FIRM, S.C, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 17-CV-88 — **William E. Duffin**, *Magistrate Judge.*

No. 17-2165

TAMMY SMITH,

*Plaintiff-Appellant,*

*v.*

WELTMAN, WEINBERG & REIS COMPANY, LPA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:16-CV-1333-NJR-SCW — **Nancy J. Rosenstengel**, *Judge.*

————————————

ARGUED JANUARY 18, 2018 — DECIDED JULY 19, 2018

————————————

Before SYKES and HAMILTON, *Circuit Judges*, and LEE, District Judge.[1]

SYKES, *Circuit Judge*. Amy Dunbar and Tammy Smith received collection letters offering to settle their debts at a significant discount. Both letters included the warning: "This settlement may have tax consequences." In separate suits Dunbar and Smith claimed that this statement is misleading in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, because they were insolvent when they received the letters and therefore would not have incurred a tax liability for any discharged debts.

The courts below rejected that argument and dismissed the suits on the pleadings. We consolidated the appeals and now affirm. The challenged statement is not false or misleading because "may" does not mean "will" and insolvent debtors might become solvent before settling their debt, triggering the possibility of tax consequences.

## I. Background

In January 2016 the Kohn Law Firm, S.C., a collection law firm, sent Amy Dunbar a letter seeking to collect a debt originally owed to a bank. The letter stated that the full balance due was $4,049.08 and offered to settle the debt for $2,631.90, but warned: "NOTICE: This settlement may have

---

[1] Of the Northern District of Illinois, sitting by designation.

tax consequences." Dunbar was insolvent when she received the letter and filed for bankruptcy six months later.

That same month Weltman, Weinberg & Reis, also a collection law firm, sent Tammy Smith a collection letter seeking to collect a consumer credit-card debt. The letter stated that the balance due was $4,319.69 and invited Smith to contact the law firm to discuss satisfying her debt obligation for a reduced amount. Like Dunbar's letter, this letter warned: "This settlement may have tax consequences." Smith too was insolvent when she received the letter and filed for bankruptcy two months later.

Dunbar and Smith filed separate actions under § 1692e alleging that the collection letters were misleading because they were insolvent and therefore would not have had to pay taxes on any discharged debt. A magistrate judge and district judge, respectively, dismissed the cases for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). Both judges concluded that alerting debtors that a settlement "may" have tax consequences is neither false nor misleading.

## II. Discussion

The FDCPA makes it unlawful for a debt collector to use "any false, deceptive, or misleading representation or means in connection with the collection of [a] debt." § 1692e. An objective "unsophisticated consumer" standard applies to § 1692e claims: We ask "whether a person of modest education and limited commercial savvy would be likely to be deceived" by the debt collector's representation. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007). The objective test disregards "bizarre" or "idiosyncratic" interpretations of collection letters. *Gruber v. Creditors'*

*Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014); *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). A collection letter can be "literally true" and still be misleading, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011)—for example, if it "leav[es] the door open" for a "false impression," *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

Because this is a fact-laden inquiry, dismissal on the pleadings is proper only in "cases involving statements that plainly, on their face, are not misleading or deceptive." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quotation marks omitted). Our review is de novo. *Gruber*, 742 F.3d at 274.

To begin, the statement at issue here—"this settlement may have tax consequences"—is literally true. The discharge of a debt is generally considered taxable income. 26 U.S.C. § 61(a)(11). There are some exceptions. Relevant here, the discharge of a debt is not taxable if it occurs while the taxpayer is insolvent, meaning that his liabilities exceed the value of his assets. *Id.* § 108(a)(1)(B), (d)(3). We accept, as we must, that Dunbar and Smith were insolvent when they received the collection letters. No matter. A generalized statement that a debt settlement "may" have tax consequences is true on its face.

A literally true statement may be misleading if it gives a false impression. The plaintiffs argue that the warning has this effect for two reasons. First, they contend that a debtor might read the tax-consequences statement to mean that if he does not pay the full balance owed, the debt collector or creditor will report him to the IRS. But the challenged statement says nothing whatsoever about IRS reporting, so we

can safely disregard that proposed reading as "bizarre" or "idiosyncratic."[2] *Gruber*, 742 F.3d at 274.

Second, the plaintiffs insist that a debtor might read the reference to "tax consequences" to mean that he could incur a tax liability if he settles his debt for less than the full amount due, and that's contextually misleading because most recipients of debt-collection letters are insolvent and therefore would incur no tax liability from a discharged debt. We're not persuaded. An unsophisticated consumer would not understand the word "may" to mean "will." And an insolvent debtor can emerge from insolvency at any time.

Our decision in *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), is instructive on this point. The collection letter there stated: "[I]f applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." *Id.* at 574. For one of the plaintiffs, the account continued to accrue interest, but for the other two, the accounts were closed and the creditors stopped adding interest. *Id.* The plaintiffs argued that the statement was false in violation of the FDCPA because two of the creditors were no longer adding interest. *Id.* at 575. We called that argument "downright frivolous" because "[t]he letter didn't say they would [add interest], only that they might." *Id.* Similarly here, it is not misleading to say that a debtor who settles a debt *may* incur

---

[2] In some situations an entity that discharges a debt must file a 1099-C form with the IRS. 26 U.S.C. § 6050P(a). No obligation to report exists if the principal debt forgiven falls below $600. 26 C.F.R. § 1.6050P-1(a)(1), (d)(2)–(3); 26 U.S.C. § 6050P(b). The reporting obligation has no bearing on this case because the law-firm collection letters did not mention IRS reporting.

a tax liability. The use of the word "may" signals only that tax consequences are possible in the case of some debtors, *not* that tax consequences are possible or likely (much less certain) in *this particular debtor's* circumstances.

Further, contrary to the plaintiffs' argument, the tax-consequences warning does not give the false impression that debtors should pay their entire debt to avoid a tax liability. The letters are invitations to settle the debt and are clearly meant to encourage the debtor to take advantage of the discount offered. A rational debtor knows that income taxes are calculated as a percentage of income, and he would likewise understand that even if the discount counts as taxable income, the benefit would still outweigh the cost. That makes it all the more implausible that the tax-consequences warning would dupe a debtor into paying the full debt amount.

The plaintiffs rely heavily on our decision in *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012), but that case is easily distinguished. The debt-collection letter there stated: "Our client may take legal steps against you[,] and if the courts award [judgment], the court could allow court costs and *attorney*['*s*] *fees*." 689 F.3d at 820–21 (emphasis added). In reality, however, an award of attorney's fees was impossible because the contract between the debtor and creditor did not provide for them. *Id.* at 823–24. We found this statement misleading because it implied that the debt collector could do something—file a lawsuit to recover the debt *plus* attorney's fees—that it was not authorized to do. *Id.* at 824–25. In contrast, the tax-consequences statement at issue here is not misleading because it does not imply that the debt collector may or will do something it has no authority to do.

The plaintiffs also rely on *Gonzales v. Arrow Financial Services*, 660 F.3d 1055 (9th Cir. 2011), but that case too is distinguishable. There the debt collector was collecting on a portfolio of debts that were more than seven years old and therefore obsolete, which meant none of them could be reported to a credit bureau. *Id.* at 1059. The collection letter stated: "Upon receipt of the settlement amount and clearance of funds, and *if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled*." *Id.* The debt collector's conditional language—"*if we are reporting the account*"—made the statement literally true. *Id.* at 1062. But the statement implied that the debt collector could report the obsolete debts to a credit bureau; the Ninth Circuit found that implication misleading because there were no circumstances under which it could do so. *Id.* at 1063. Again our case is meaningfully different. The tax-consequences warning does not imply that the debt collector can or will take an action it has no authority to take.

Another distinguishing feature in both *Lox* and *Gonzales* is that the conditions were static. There was no chance that the contract between the debtor and creditor in *Lox* would be rewritten to provide for attorney's fees. Nor was there any possibility that the old, obsolete debts in *Gonzales* would suddenly become reportable to a credit bureau. Solvency, on the other hand, is fluid. An insolvent debtor may become solvent before settling his debt. So it is not misleading to say that a debt settlement "may" result in a tax liability—not only because solvent recipients may face tax consequences but also because insolvent recipients like Dunbar and Smith could become solvent before settling their debts.

Yet another reason *Lox* and *Gonzales* do not apply here is that a debt collector has no reason or way to know whether an individual debtor is solvent or insolvent at a given time. In contrast, the debt collector in *Lox* knew (or could easily determine) whether the contract between the creditor and debtor allowed for attorney's fees, and the debt collector in *Gonzales* was well aware that the debts it was collecting were obsolete and therefore not reportable to credit bureaus. Here, in contrast, a consumer would not expect a debt collector to know his financial status and therefore would not expect a debt-collection letter to be specially tailored to his particular financial circumstances, whether solvent or insolvent.

The plaintiffs also invoke a handful of district-court decisions, but all are inapplicable or unpersuasive. In *Drennan v. Van Ru Credit Corp.*, 950 F. Supp. 858, 860 (N.D. Ill. 1996), the challenged collection letter stated: "The legal review process may … result in a recommendation to your creditor to file a lawsuit against you." *Drennan* involved a particular subsection of § 1692e that makes it unlawful for debt collectors to "threat[en] to take any action … that is not intended to be taken." *Id.* (citing 15 U.S.C. § 1692e(5)). The district court denied a motion to dismiss because the complaint alleged that the debt collector had no intention of recommending that the creditor sue the debtor. *Id.* Any comparison to *Drennan* is entirely inapt; the defendants here are not accused of making a false threat.[3]

---

[3] The plaintiffs' reliance on Federal Trade Commission commentary is misplaced for the same reason. The commentary in question discusses when a debt collector is permitted to threaten possible action by it or a third party. Statements of General Policy or Interpretation, Staff Com-

Next, the plaintiffs point to district-court decisions finding collection letters misleading because they generalized that the debt collector was *required* to report settlements to the IRS without identifying the circumstances under which no such report was necessary. *See Carlvin v. Ditech Fin. LLC*, 237 F. Supp. 3d 753, 758 (N.D. Ill. 2017) ("Not only did [d]efendant's statement fail to describe the specific exceptions that might apply, it failed to acknowledge the existence of any exceptions by asserting that [d]efendant was *required* to report *any* debt forgiveness.") (internal quotation marks omitted); *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 746–47 (E.D. Pa. 2014) (holding that the statement that the creditor is "required to file a form [1099-C] with the Internal Revenue Service for any cancelled debt of $600 or more" is not entirely accurate because it fails to notify the debtor of exceptions to the reporting requirement). Neither case helps our plaintiffs. Each involved a debt-collection letter that mischaracterized a mere possibility as a certainty. That's not so here. The law-firm collection letters merely signaled as a general matter that tax consequences are a possibility. There's nothing misleading about that.

Finally, the plaintiffs hang their hat on *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998). The collection letter there stated: "[*U*]*nder certain circumstances*, cancellation or discharge of [a] debt *may* be considered income" by the IRS and state taxing authorities. *Id.* at 257 (emphases added). The district court held that if a majority of debtors receiving this

mentary on the FDCPA, 53 Fed. Reg. 50097, 50106 (Dec. 13, 1988). The statement in question here simply warns that a settlement "may" have tax consequences; it does not say or imply that the debt collector or a third party may take an action against the debtor.

letter would not realize income for the discharged debt, then the statement created a misleading impression in violation of the FDCPA. *Id.* at 260. This reasoning rests on the faulty assumption that a debtor receiving this letter would ignore the phrase "under certain circumstances" and misconstrue "may" to mean "will." We do not find *Sledge* persuasive.[4]

In short, the § 1692e claims were properly dismissed on the pleadings. The tax-consequences warning is literally true and not misleading under the objective "unsophisticated consumer" test.

AFFIRMED.

---

[4] The plaintiffs also analogize to several FTC Act cases from the 1950s and 1960s challenging deceptive advertisements promoting cures for baldness and fatigue. *See, e.g., Erickson v. FTC*, 272 F.2d 318, 319–21 (7th Cir. 1959) (involving an ad falsely claiming "without qualification" that a product would cure baldness); *J.B. Williams Co. v. FTC*, 381 F.2d 884, 890–91 (6th Cir. 1967) (involving an ad falsely claiming that a treatment would cure fatigue in most cases); *Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18, 19–20 (5th Cir. 1960) (involving a similar ad falsely claiming that a product would cure baldness in 95% of cases). These cases are irrelevant here. The collection letters in this case did not falsely claim that a debt settlement would result in tax liability in most or many cases.