In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1936

ANNE O'BOYLE,

*Plaintiff-Appellant,*

*v.*

REAL TIME RESOLUTIONS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 17-C-0957 — **Lynn Adelman**, *Judge.*

ARGUED OCTOBER 24, 2018 — DECIDED DECEMBER 7, 2018

Before BAUER, MANION, and BRENNAN, *Circuit Judges.*

MANION, *Circuit Judge.* Anne O'Boyle claimed a debt-collection letter sent by Real Time Resolutions, Inc. ("RTR") violated the Fair Debt Collection Practices Act. The letter stated that important information was on the back of its first page, but the required validation notice was on the front of its second page. The district court dismissed for failure to state a claim and denied leave to amend the complaint. O'Boyle appeals. We affirm.

## I. Facts

At all times germane, O'Boyle was a "consumer" under the FDCPA, residing in Wisconsin. RTR attempted to collect an alleged personal credit card debt from her. RTR mailed her a debt-collection letter consisting of two sheets of paper. This was the first letter RTR sent to her about this debt.

The front side of the first sheet displays RTR's header and the date of the letter: "04/07/2017." Below that is information regarding the creditor and balance. "Dear ANNE O'BOYLE," the letter begins, "You are hereby notified that the collection duties associated with the above referenced account, that is the right to collect payments from you, are being transferred from NORDSTROM FSB to REAL TIME RESOLUTIONS, INC. ('RTR') effective 04/06/2017."

Framed in a box just below the middle of this page is a paragraph warning O'Boyle that RTR is a debt collector, this "is an attempt to collect a debt, and any information obtained will be used for that purpose."

Immediately below that box is another box directing O'Boyle to see the reverse of the first sheet: "Please see the back of this page for additional important information regarding this account." Next come some addresses. Finally, the bottom of the page (twice) shows the pagination: "1 of 2."

The back of the first page begins with these sentences in bold: "**THE FOLLOWING NOTICES APPLY TO THE RESIDENTS OF THE FOLLOWING STATES, AS NOTED. THIS LIST IS NOT A COMPLETE LIST OF RIGHTS CONSUMERS MAY HAVE UNDER STATE AND FEDERAL LAW.**" Then comes information about ten States. Wisconsin occupies the penultimate slot with only a banal

notice about the collection agency's licensing. The back of the first page does not include any pagination.

The front of the second page begins like the front of the first, with RTR's header and the date. Then, as the first paragraph on the second page, comes the FDCPA-required validation notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment if applicable and mail you a copy of such verification or judgment. If you make a written request to this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. We are required under various state laws to notify consumers of certain rights.

This text is clear, prominent, and readily readable. The font is normal in shape and size—essentially the same font as most of the letter. O'Boyle does not claim any problem regarding the font or regarding the language itself in this paragraph.

Then come addresses for correspondence and payments, a phone number, some parting caveats, and the closing: "Sincerely, REAL TIME RESOLUTIONS, INC." And the bottom (twice) shows the pagination: "2 of 2." The back of the second sheet is blank, so far as the record reflects.

In sum, the validation notice is not on either side of the first sheet. The front of this sheet directs the reader to "the back of this page for additional important information" but that "additional important information" does not include the notice. Instead, the notice is at the second sheet's front top.

## II. Procedural Posture

O'Boyle sued RTR for violating the FDCPA. She filed a class action complaint alleging a single count: RTR's letter misleads the unsophisticated consumer by telling him that important information is on the back, but instead providing the validation notice on the front of the second page, thereby "overshadowing" the consumer's rights under 15 U.S.C. § 1692g(b) and failing to communicate the FDCPA rights effectively. She argues RTR's letter misdirects consumers away from the validation notice. She argues the misdirection falsely represents that this notice is unimportant, and overshadows the disclosure of dispute rights, in violation of 15 U.S.C. §§ 1692e, 1692e(10), 1692g, and 1692g(b). The court never certified the proposed class. Instead, the court granted RTR's Rule 12(b)(6) motion to dismiss, denied O'Boyle's Rule 59(e) motion to reconsider, and declined to give O'Boyle leave to amend her complaint. She appeals.

## III. Analysis

### A. Dismissal

### 1. Standards

We review *de novo* the dismissal of a complaint for failure to state a claim, accepting O'Boyle's factual allegations as true and drawing all permissible inferences in her favor. *West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). To survive a motion to dismiss for failure to state a claim,

O'Boyle must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Whether a debt-collection letter is confusing is generally a fact question that, if well pleaded, survives a Rule 12(b)(6) motion. *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012). But if it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it," then plaintiff fails to state a claim and dismissal is appropriate. *Id.* (citing *Taylor v. Cavalry Inv.*, 365 F.3d 572, 574 (7th Cir. 2004)).

### 2. FDCPA

Here is what the FDCPA says: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Section 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

Section 1692g requires debt collectors to notify consumers of their validation rights:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

… Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

*Id.* § 1692g.

Here is what the FDCPA does not say. The FDCPA does not say a debt collector must put the validation notice on the first page of a letter. Nor does the FDCPA say the first page of a debt-collection letter must point to the validation notice if it is not on the first page. Nor does the FDCPA say a debt collector must tell a consumer the validation notice is important. Nor does the FDCPA say a debt collector may not tell a consumer that other information is important.

Rather, the statute in general terms forbids a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. The statute requires a debt collector to give the consumer the validation notice. *Id.* § 1692g. The statute forbids a debt collector from overshadowing the disclosure and from engaging in communication inconsistent with the disclosure. *Id.* § 1692g(b). "Overshadowing" means obscuring, *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009), or confusing, *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). "Overshadowing" can be literal, *Olson v. Risk Mgmt. Alts.*, 366 F.3d 509, 512 (7th Cir. 2004); *Bartlett*, 128 F.3d at 500 (fine print, faint print, or confusing typeface), or metaphorical.[1]

Although the word "confusing" does not appear in the applicable statutory text, we have interpreted the FDCPA to prohibit confusing presentations: "The validation notice required by the FDCPA must be presented in a nonconfusing

---

[1] Congress amended § 1692g(b) in 2006 to add "overshadow." But as we noted in *Zemeckis*, this amendment codified a rule courts had already instituted. 679 F.3d at 635 n.1. So cases decided before the 2006 amendments continue to illuminate "overshadow."

manner." *Sims v. GC Servs.*, 445 F.3d 959, 963 (7th Cir. 2006) (citing *Bartlett*, 128 F.3d at 500). A debt collector must present the notice "clearly enough that the recipient is likely to understand it." *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (citing *Bartlett*, 128 F.3d at 500–01).

### 3. *Unsophisticated consumer*

The controlling standard for determining whether this letter violates the FDCPA as claimed is the "unsophisticated consumer." *Dunbar v. Kohn Law Firm*, 896 F.3d 762, 764 (7th Cir. 2018). The hypothetical unsophisticated consumer is uninformed, naïve, and trusting, but has rudimentary knowledge about the financial world. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366 (7th Cir. 2018). Though not fully wise (the very root of "unsophisticated") he is wise enough to read collection letters with added care. *Id.* He is reasonably intelligent and can make basic logical deductions and inferences. *Id.* Stew in ridiculous circular logic he does not, because he is "reasonable." *St. John v. Cach, LLC*, 822 F.3d 388, 390 (7th Cir. 2016). He is not the village idiot or a "dimwit." *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009). We rejected the "least sophisticated consumer" standard chartered by other circuits. *Gammon v. GC Servs.*, 27 F.3d 1254, 1257 (7th Cir. 1994) ("It strikes us [as] virtually impossible to analyze a debt collection letter based on the reasonable interpretations of the least sophisticated consumer.")

Instead, we ask whether someone of modest education and limited commercial savvy would likely be deceived by the letter. *Dunbar*, 896 F.3d at 764. We reject bizarre, idiosyncratic interpretations. *Id.* at 765. We ask whether the letter "could well confuse a substantial number of recipients." *Taylor*, 365 F.3d at 575. Under this standard, a letter might be

literally true, but still misleading or confusing. *Dunbar*, 896 F.3d at 765. Or a letter might be technically false, but not misleading or confusing. *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 349 (7th Cir. 2018). This standard is objective; whether the letter actually misled, deceived, or confused O'Boyle herself is not dispositive. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) ("[T]he unsophisticated consumer test is 'an objective one' … meaning that it is unimportant whether the individual that actually received a violative letter was misled or deceived."). Also, whether RTR intended to mislead, deceive, or confuse is not dispositive.

### *4. Discussion*

O'Boyle argues the district court erred in holding RTR did not overshadow the validation notice by referring her to "important information" on "the back of this page" but providing the validation notice on a separate sheet instead. We disagree with O'Boyle. As a matter of law, RTR did not overshadow the validation notice by putting it on page two when page one refers to "important information" on its back, but there gives various notices other than the validation notice. To the contrary, the validation notice appears in clear, readily readable font near the top of page two. Even an unsophisticated consumer—maybe especially one—can be expected to read page two of a two-page collection letter.

Even if seeing the reference to "important information" on the back of page one, flipping there, and scanning it imposes a speed bump before the validation notice, it is only a slight speed bump, not a road barrier. After all, the reverse of page one begins by saying it is *not* a complete list of all rights consumers might have under federal law. And the top of page two immediately presents the required validation notice.

O'Boyle's briefing sometimes makes it seem RTR's validation notice arrived as a separate, random, easily lost insert. Not so. The notice appears at the top of page two, which looks for all the world like a continuation of the letter because it *is* a continuation of the letter. It bears a signature block for RTR. It includes the pagination "2 of 2." It is reasonable and fair to expect an unsophisticated consumer to read the second page of a debt-collection letter and see this notice. The district court correctly concluded a consumer reading RTR's letter with "added care" would "undoubtedly see and comprehend the validation notice." (Order, No. 17-C-0957, DE 16 at 5.) A consumer who reads the front page, follows the direction to see the reverse side, and scans through that side all the way down to the pedestrian Wisconsin-specific notice toward the bottom is sophisticated enough to see and understand the validation notice toward the top of page two of two. Or as the district court put it, "a consumer who reads the front and back of the first page of a short letter and then completely disregards the second page has not read the letter with care." (*Id.*)

O'Boyle attempts to show RTR violated a bright-line rule. She claims this Court "has indicated" an initial collection letter lacking the validation notice on the first page must clearly and unambiguously direct the consumer to the validation notice's location. She cites *Zemeckis*, 679 F.3d at 637, and *Sims*, 445 F.3d at 964, for this supposed rule. If this were the rule, then O'Boyle would win. But it is not the rule, and neither case she cites established such a rule.

In *Sims*, two consumers each received a dunning letter. At the "bottom of the front page" came this warning: "'**NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER**

**INFORMATION.'"** *Sims*, 445 F.3d at 961. The validation notice came "on the reverse side of the demand letters" in gray ink. *Id.* We affirmed summary judgment for defendants, concluding: "Though the validation notice text on the back is more difficult to read than the text on the front, it is adequately readable and noticeable when combined with the attention called to it on the front of the letter." *Id.* at 964. But we stopped far short of declaring a bright-line rule that collection letters lacking the validation notice on the first page must clearly and unambiguously direct consumers to the validation notice's location, despite O'Boyle's contention.

In *Zemeckis*, we faced a nearly identical issue. A debt collector sent a dunning letter to a consumer. The front of the letter warned, in all capital letters, that the consumer should "'see [the] reverse side for important information.'" *Zemeckis*, 679 F.3d at 637 (alteration in *Zemeckis*). The validation notice was "on the back of the letter." *Id.* We upheld dismissal for failure to state a claim, concluding that "locating the validation notice on the back of the letter, while undesireable, does not engender confusion sufficient to state a claim under the FDCPA." *Id.* But again, we did not come close to establishing any sort of bright-line rule that collection letters lacking the validation notice on the first page must direct consumers to the validation notice's location.

O'Boyle has not pointed us to anything in the FDCPA, the Supreme Court's decisions, or our decisions establishing the bright-line rule she proffers. Nor could we find any such rule. This is probably because even an unsophisticated consumer— maybe especially one—can be expected to read this entire collection letter, including page two. *See Boucher*, 880 F.3d at 366 ("The unsophisticated consumer is … wise enough to

read collection notices with added care … ."). Indeed, at some point, multiple warnings on the front of a two-sheet letter about where to flip and what is important would themselves confuse and overshadow, and might push the text onto a fourth side. *Cf. Moss v. Trane U.S.*, No. 13-cv-42-bbc, 2016 WL 916435, at *7 (W.D. Wis. 2016) (In the product-liability context: "Perversely, the confusion associated with multiple, potentially inconsistent, warnings might cause more harm than having too few warnings.").

The validation notice in this case is arguably more prominent than those we held sufficient in *Sims* and *Zemeckis*. There, the letters carried the notices on their backs. But here, the notice comes toward the top of the front of the letter's second page. In any event, the letter here objectively did not overshadow the validation notice or otherwise engender confusion or misunderstandings about it as alleged. O'Boyle claims RTR buried the validation notice. If so, the notice is an incorrupt corpse in an above-ground glass casket.

As for whether RTR implied the validation notice is unimportant by calling other information important, RTR has not implied this. The notice has a prominent place in the letter. The reference on the front of page one to its back is not a reference to "the only important information," but is explicitly a reference to "additional important information." And the back of page one leads with the warning that it is not a complete list of rights. Besides, the FDCPA does not require a debt collector to tell the consumer the validation notice is important. The FDCPA merely requires a debt collector to provide the validation notice in a manner that is not false, deceptive, misleading, confusing, overshadowed, or inconsistent.

It is apparent from reading the letter that not even a significant fraction of the population would be misled by it as claimed. We therefore conclude the district court properly dismissed O'Boyle's complaint.

## B. Amendment

### 1. Denial of leave to amend

When it dismissed the complaint, the district court also entered judgment without allowing O'Boyle to amend her complaint. O'Boyle filed a post-judgment motion seeking leave to amend to add new facts and theories supporting her original claim and to add entirely new claims. The proposed amendments (as presented in the post-judgment briefing below and in the appellate briefing) bleed across the line distinguishing the old claim from the proposed new claims.

The district court entered an order explaining it dismissed the complaint and entered judgment without allowing an opportunity to amend because any amendment would be futile. Amending would be futile, the court reasoned, because the dismissal was due to the failure of O'Boyle's legal theory, not any failure to plead facts necessary to support that theory.

The court turned to the new allegations in the post-trial motion and treated them as attempts to assert new claims. The court noted O'Boyle was trying to assert these new claims based on parts of the letter she had not previously challenged, and was trying to change her original legal theory. But the court determined O'Boyle had shown no good reason for waiting so long to assert these new claims, which were based on the same letter she attached to her original complaint and which did not rely on new legal authority. She had no excuse for waiting so long. The court concluded that allowing

amendment following O'Boyle's post-dismissal motion would cause undue delay, which would unfairly prejudice RTR and waste the court's time and effort.

## 2. Standards

O'Boyle argues the court erred in denying her leave to amend her complaint. Generally, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510 at 519 (7th Cir. 2015). Rule 15(a)(2) provides that after the period for amendment as a matter of course expires, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

We generally review denial of leave to amend for abuse of discretion. *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016); *Runnion*, 786 F.3d at 524. When plaintiff has had no prior chance to amend, our review for abuse of discretion becomes more rigorous. *Runnion*, 786 F.3d at 519. But when reviewing the denial of leave to amend based on futility, we apply *de novo* the legal-sufficiency standard of Rule 12(b)(6) to determine if the proposed amended complaint fails to state a claim. *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 525 (7th Cir. 2018); *Runnion*, 786 F.3d at 524. "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

### *3. Original claim*

As noted, the court concluded that amending to try to save the original complaint would have been futile. We review this decision *de novo*, considering O'Boyle's arguments below, echoed on appeal. We agree with the district court. Applying Rule 12(b)(6)'s legal-sufficiency standard, we conclude none of the proposed amendments would push O'Boyle's original claim across the threshold of plausibility.

O'Boyle offers a litany of proposed amendments she argues would support her original claim, including: 1) the first page is so confusing it would intimidate the debtor into paying; 2) this confusion overshadows the validation notice and can be independently false, deceptive, or misleading; 3) the letter is false and misleading; and 4) RTR "violated the FDCPA simply by providing its phone number without adequately advising the unsophisticated consumer that she must dispute the debt in writing to require the debt collector to verify the debt."[2] She also proposes additional amendments to raise new claims, and seems to argue these amendments would also support her original claim.

But no proposed amendment pushes O'Boyle's original claim into the realm of plausibility. The original claim is that the letter misleads the unsophisticated consumer by telling him important information is on the back but instead putting

---

[2] O'Boyle raised this phone-number problem below, but she did not specifically raise it on appeal until oral arguments. Therefore she forfeited it. To compound the problem, she was not clear whether she intended this new proposed allegation only to support her original claim or whether she intended this new allegation also to be a separate claim. But even without forfeiture, the denial of leave to add this allegation would survive *de novo* review and abuse-of-discretion review.

the validation notice on the front of the second page, thereby overshadowing the validation notice and violating the FDCPA. But even accepting all O'Boyle's factual allegations (original and proposed) as true and drawing all permissible inferences in her favor, the original claim still fails. The letter in no way actually alleged or proposed to be alleged overshadows the notice or causes confusion about the dispute rights under the unsophisticated consumer standard.

### 4. Proposed new claims

O'Boyle also offers a host of proposed amendments that would raise new, additional claims based on the same letter. The court denied leave to add these claims on the grounds of undue delay and prejudice. We rigorously review this decision for abuse of discretion.

As the court noted, O'Boyle sought leave to amend to assert new claims based on parts of the letter she did not challenge either in her original complaint or in her brief opposing the motion to dismiss. O'Boyle did not seek leave to amend her complaint in response to the motion to dismiss. She did not inform the court in her brief opposing the motion to dismiss that she intended to raise new factual allegations to support her original claim or that she intended to raise altogether new claims. She first requested leave to amend in her post-judgment motion. She offered no good reason below for waiting until then, and she offers no good reason on appeal. Nowhere does she argue she did not discover the factual or legal basis for her new claims until after dismissal. Neither the letter nor the letter of the law materially changed. The court was within its discretion in finding undue delay.

The court turned to an analysis of prejudice. If O'Boyle had sought leave to bring new claims and theories in response to the motion to dismiss, the court noted, it could have granted her leave and denied the motion to dismiss as moot, thereby saving RTR the expense of filing a reply in support of its motion and sparing the judicial resources spent deciding the motion. The court acknowledged RTR likely would have filed a new motion to dismiss attacking the amended complaint, but observed that the parties and the court in that event could have addressed all claims and theories in a single, efficient round. The court noted allowing O'Boyle to present her claims "in piecemeal fashion" would force the court to attend to this case twice over several months and relearn basic facts and legal principles. It would force the court to write two opinions resolving motions to dismiss instead of one. The court allowed that a good reason for delay might justify the prejudice, but noted O'Boyle offered no reason at all. The court was within its discretion in finding prejudice.

In sum, none of O'Boyle's proposed amendments, construed broadly and in her favor, push the original claim into the realm of plausibility. Therefore, denial of leave to amend to bolster the original claim was properly grounded on futility. And the district court was within its discretion in denying O'Boyle leave to amend her complaint to raise new claims, given undue delay and unfair prejudice.

### IV. Conclusion

We AFFIRM dismissal and denial of leave to amend.